**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA TRACY, an individual, | ) | Case No.: |
|                     Plaintiff, | ) | |
|       v. | ) | |
| THORNTON TOWNSHIP, a municipal corporation; | ) | |
| TIFFANY HENYARD, in her individual and official | ) | |
| capacity; KEITH FREEMAN, in his individual and | ) | **JURY TRIAL DEMANDED** |
| official capacity; ROBERT HUNT, in his individual and | ) | |
| official capacity, | ) | |
|                     Defendants. | ) | |

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, Custardo Law LLC, for her Verified Complaint against the Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, in her individual and official capacity; and KEITH FREEMAN, in his individual and official capacity; and ROBERT HUNT, in his individual and official capacity, and in support thereof states and alleges as follows:

## NATURE OF THE ACTION

1.      This is a federal-question action involving claims under 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment of the U.S. Constitution, and 29 U.S.C. § 2615, alleging violations of the Family and Medical Leave Act, and common law under Illinois law (common law retaliatory discharge). TRACY was discharged from her employment with THORNTON TOWNSHIP in retaliation for taking FMLA leave as well as refusing to take part in Defendants' unlawful schemes.

## PARTIES

2.      Plaintiff, SANDRA TRACY ("TRACY"), is an individual that resides in Cook County, Illinois, and has been an Illinois resident at all relevant times herein.

3.     Defendant, THORNTON TOWNSHIP, is a public body located in Cook County, Illinois, which was where TRACY was employed at all relevant times herein.

4.     Defendant, TIFFANY HENYARD ("HENYARD"), is an individual that resides in Dolton, Illinois and was at all relevant times herein the Mayor of DOLTON and the Supervisor of THORNTON TOWNSHIP.

5.     Defendant, KEITH FREEMAN ("FREEMAN"), is an individual that resides in Cook County, Illinois and was at all relevant times herein the Village Administrator of DOLTON as well as employed as a Special Assistant to the Supervisor of THORNTON TOWNSHIP.

6.     Defendant, ROBERTY HUNT ("HUNT"), is an individual that resides in Cook County, Illinois and was at all relevant times herein the Director of Finance of THORNTON TOWNSHIP and later and appointed as the acting Manager of the Human Resources Department of THORNTON TOWNSHIP.

## JURISDICTION AND VENUE

7.     This Court has original jurisdiction over the federal claims in this action pursuant to 28 U.S.C. § 1331 as well as supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. §1367 because those claims are so related to TRACY's federal-question claims that they form part of the same case or controversy

8.     Venue is proper under 28 U.S.C. §1391(b) as all of the parties reside within the judicial district, and the events from which this claim arise all occurred within the District.

## FACTS

9.     In 2016, TRACY began working for THORNTON TOWNSHIP as a Manager of the Human Resources ("HR") Department.

10.    On or about October 21, 2021, TRACY gave notice to THORNTON TOWNSHIP of her intent to take leave under the Family and Medical Leave Act ("FMLA") for a planned surgery.

11.     On or about February 28, 2022, began her approved FMLA leave and was admitted to the hospital for her surgery on March 1, 2022.

12.     On March 3, 2022, HENYARD was sworn in as the Supervisor of THORNTON TOWNSHIP.

13.     On March 10, 2022, TRACY sent an email to her direct manager, Dr. Jerry Weems, Transitional Executive Director, requesting that he assist and support her in retrieving her personal items from her office. However, Tony Sherman, the facility manager, repeatedly refused to make arrangements to unlock her office to retrieve these personal items. These personal items were finally permitted to be retrieved on March 15, 2022, however only after unnecessary interference from Tony Sherman regarding what doors and staircases could be used.

14.     On March 10, 2022, Henyard held an introductory meeting with all department heads. The invitation was not sent to TRACY, who was the Manager of the Human Resources Department. TRACY wrote email to her direct manager, Dr. Jerry Weems, requesting permission to attend the Managers meeting virtually. This request was denied.

15.     On March 14, 2022, Tracy sent an email to Henyard congratulating her on her appointment as Supervisor and introducing herself.

16.     On March 16, 2022, Henyard along with Special Assistant Keith Freeman met with Tracy at Tracy's request. During this meeting, Henyard requested two policies (Workplace Drug Abuse policy; and Employee Social Media policy].

17.     During this meeting, Henyard also asked Tracy for a list of all Township employees (between 180-300 individuals) with notes detailing all their faults and any known "dirt on them," including information which may have violated the employees' privacy rights, given what Tracy may have known as HR Manager.

3

18.     Shocked by the request, but unsure how to respond in the moment, TRACY told HENYARD something to the effect that she would "sleep on it."

19.     The following day, on or about May 17, 2022, TRACY emailed HENYARD and said she would not agree to this request to gather "dirt" on THORNTON TOWNSHIP employees.

20.     On March 17, 2022, Henyard fired Jessica Jones, Assistant HR Manager, and Stephanie Wiedeman, Thornton Township Chief of Staff. These terminations came with no notice, no due process, and were done at about 10:00 PM in a closed-door meeting with Board Trustees. The normal and appropriate HR protocol to terminate an employee was not followed, and Jones and Wiedeman found out about their terminations from other employees the following day.

21.     On March 23, 2022, Tracy sent an email to Township Board Clerk, Loreta Wells, requesting information on the termination of her subordinate, Assistant HR Manager, Jessica Jones. As Township Board Clerk, Loreta Wells attended the late-night private meeting in which Ms. Jones was terminated.

22.     Loreta Wells responded and said that she and the Board Trustees were told that Tracy was aware and already knew about the termination ahead of time.  However, this was not true.

23.     On March 19, 2022, Tracy requested a complete copy of her personnel file. This request was made after finding out that management planned to destroy all employee files and records. Upon information and belief, management subsequently destroyed all employee personnel files.

24.     On May 24, 2022, Tracy sent an email to Henyard, Freeman, Dr. Jerry Weems, and Finance Director Robert Hunt, requesting a meeting for the impending conclusion of FMLA and return to work. The email requests a response to the following:

a.  Confirmation that Tracy's position remained as Human Resources Manager;
b.  Assignment of a private, manager-level office in the headquarters building as she had prior to commencement of her FMLA leave;

c. Restoration of access to all organization HR assets and work product required in the position including full administrator management authority and access to ADP, the primary HRIS [Human Resources Information System], all other digital platforms as previously assigned, and paper files including all employee files and HR files with correspondent security protocols (keys, digital access);

d. Assignment of a trained and experienced HR Assistant knowledgeable in HR practices, benefits management, and labor law as previously existed at the commencement of the FMLA leave;

e. Clarification of official direct reporting relationship; and

f. Continuation of current compensation, benefits, and position authority.

25. Shortly thereafter, Freeman responded to Tracy via email inviting her to a meeting on June 6, 2022, which was later changed to June 7, 2022.

26. On June 7, 2022, a meeting was held to discuss Tracy's return to work following her FMLA leave in response to her request for information. Attendees in the meeting included: Freeman, Dr. Jerry Weems, Hunt, and Tracy. Henyard declined to attend.

27. Freeman led the hour-long meeting on June 7, 2022; and despite Dr. Weems previously having been Tracy's designated direct reporting manager, Dr. Weems did not speak at all.

28. The meeting categorically addressed each of the elements previously identified in Tracy's May 24, 2022 email as follows:

**a. Confirmation that Tracy's position remained as Human Resources Manager:**

- *Tracy would be demoted from Human Resources Manager to "HR Clerk" upon her return.*

**b. Assignment of a private, manager-level office in the headquarters building as she had prior to commencement of her FMLA leave;**

- *Tracy would not be assigned to the private office she utilized pre-FMLA leave, but rather a workstation which had yet to be identified upon her return;*

**c. Restoration of access to all organization HR assets and work product required in the position including full administrator management authority and access to ADP, the primary HRIS [Human Resources Information System], all other digital platforms as previously assigned, and paper files including all employee files and HR files with correspondent security protocols (keys, digital access);**

- *Access to all organization HR assets would be blocked until Henyard gave permission. Despite repeated email requests from Tracy directly to Henyard, Henyard continuously, repeatedly, and intentionally refused to even acknowledge or answer the requests.*

**d. Assignment of a trained and experienced HR Assistant knowledgeable in HR practices, benefits management, and labor law as previously existed at the commencement of the FMLA leave;**

- *HR Assistant Manager, Jessica Jones, who was well-trained in her work, was inexplicably fired March 17, 2022 in the middle of the night by Henyard. This action was taken with no notice whatsoever to Tracy. Henyard then transferred the compensation and work responsibilities of the fired Assistant HR Manager to Finance Director, Robert Hunt, a long-time political ally of the Supervisor who had no HR background. Hunt's salary instantly increased from $116,000 to $190,000. This left only one other HR employee, Anthony Butler, an intern with three (3) months tenure and little experience.*

**e. Clarification of official direct reporting relationship; and**

- *Freeman announced in the meeting that Sandra Tracy would be assigned to report to the Township attorney, James Vassili.*

**f. Continuation of current compensation, benefits, and position authority.**

- *Compensation and benefits remained the same. Position authority would be totally eliminated. Not only was Tracy no longer a manager, she had less authority than the 3-month tenured HR intern. Access to Human Resources system ADP would continue to be denied for the time being.*

29. The meeting concluded with Freeman promising to follow up with an email the next day with further clarification on reporting to Township attorney Vassili and well as a workstation/office assignment.

30. The following day, on June 8, 2022, Freeman failed to follow up with Tracy. As such, Tracy sent a follow up email to Henyard, Freeman, Weems, Hunt to document the discussion regarding the changed circumstances of employment from June 7, 2022, as well as follow up on her remaining questions to be answered.

31. However, neither Henyard, Freeman, Weems, nor Hunt acknowledged, answered, or replied to the email, despite all receiving and reading the email (per return receipt notifications).

32.     Because the administration failed and refused to assign Sandra Tracy a workstation, she was forced to work from home. When Tracy offered to work from the public lobby, she was instructed she could not do so.  Eventually, Tracy was locked out of Township office building.

33.     During this time, HENYARD restricted certain Village and/or Township employees' access to Village and/or Township buildings.  It was common for HENYARD to retaliate against her perceived enemies by doing so.[1]  Part of this retaliation also included being threatened by Henyard's six (6) man armed personal security detail.

34.     As such, Tracy was afraid to come inside the building for fear of further retaliation or even being arrested. When Tracy asked her previous supervisor, Dr. Weems, if she could come inside the building, she was told it would be better if she stayed outside and talk to anyone with whom she needed to meet outside.

35.     As such, at all relevant times between June 7, 2022 and September 14, 2022, Tracy either worked in her car in the Township office parking lot or from her home.

36.     On June 12, 2022, being unable to officially clock in and out of work due to not being able to enter the building, Tracy began submitting her hours via email for timecard / payroll processing with detailed notes.

37.     At the time, although Henyard's administration performed an organization-wide reclassification of the entire workforce, Tracy was the only senior manager that was not reclassified as "exempt."

---

[1] In June 2023, former DOLTON Trustee Valeria Stubbs was locked out of her office. Stubbs went to local Fox 32 Chicago news about being locked out of her office and a news report aired on the matter. https://www.fox32chicago.com/news/thornton-township-assessor-says-she-was-locked-out-of-office-by-supervisor-tiffany-henyard. Shortly thereafter, Stubbs' home and vehicle "were riddled with at least nine gun shots." Stubbs believes the shooting was ordered at the behest of Henyard. https://nypost.com/2024/02/19/us-news/critic-of-tiffany-henyard-believes-she-ordered-her-home-shot-up/

38.     As such, Tracy was required to provide her hours worked along with a report of work that was done for Freeman's approval even though Freeman had completely stopped communicating with her after June 7, 2022.  Freeman failed to acknowledge or respond to these emails.

39.     Prior to her FMLA leave, Tracy had been a member of the South Suburban Economic Development Corporation ("SSEDC") steering committee in a county-wide initiative to expand and improve adequate housing resources for employees of major employers in the region.

40.     On June 21, 2022, SSEDC sent Tracy an email regarding the steering committee. A committee meeting was being convened to address critical issues regarding initiatives being created.

41.     Tracy responded by inviting the SSEDC consortium chair to connect with Township management (Freeman and Hunt) to get direction on the Township's continued participation in the consortium since no one from Thornton Township management was speaking with Tracy after her FMLA return.

42.     After seeing Tracy responded to the SSEDC, Freeman and Henyard scolded Tracy for her unprofessional and unauthorized emails to the SSEDC.

43.     Between June 25, 2022 and August 12, 2022, Tracy began sending emails to G. Gonzalez, the Township Payroll Coordinator, detailing her hours worked.

44.     Tracy was then instructed to begin manually punching on a timeclock in the Township Office Building, despite being locked out. In order to do this, Tracy had to "sneak" into the building and punch in and out.

45.     Every instance that Tracy snuck in and out of the building led her to feeling tremendous anxiety of retribution if she was caught inside.

46.     Beginning August 1, 2022, Freeman stopped approving Tracy's timecard, resulting in a loss of pay.

47.     From August 1, 2022 through September 14, 2022, THORNTON TOWNSHIP failed to pay TRACY.

48.     The Township's failure to pay Tracy was highly consequential and detrimental to her mental health and wellbeing.  Tracy provides full support for her husband who has been seriously ill for years and is near terminal. The lack of pay was devastating to Tracy.

49.     Furthermore, during this time, Tracy could not even collect unemployment compensation due to still being employed by the Township.

50.     On August 14, 2022, due to the stress of dealing with the circumstances surrounding her employment and lack of pay, TRACY suffered a myocardial infarction (heart attack).

51.     On September 6, 2022, after being fed up with what was happening at work, Tracy sent an in-depth email to Freeman inquiring as to why she was being ignored, mistreated, and not paid.  Freeman did not respond.

52.     On or about September 9, 2022, Tracy sent an email to Freeman, Hunt, and Anthony Butler (the HR intern) demanding to be paid per Illinois Department of Labor wage & hour laws.

53.     In response to her email, Tracy was referred to Township Attorney James G. Ciesil, of the Del Galdo Law Group, LLC.

54.     Upon information and belief, on September 13, 2022, in closed door meeting with the Board of Trustees, Henyard decided to terminate Tracy.

55.     Upon information and belief, Henyard lied to the Board of Trustees in this meeting and said that Tracy was aware of her impending termination beforehand.

56.     On September 14, 2022, at 12:51 AM, Tracy received an email from James G. Ciesil, Township Attorney that her employment had been terminated, with no other information.

57.     In response thereto, Tracy sent a response email back requesting a due process hearing. However, TRACY never received a response.

9

58.     As such, TRACY was terminated without a pre- or post-termination hearing.

59.     While employed with THORNTON TOWNSHIP, TRACY was a dedicated employee that enjoyed the work she did, and she planned to stay with THORNTON TOWNSHIP for the remainder of her career.

60.     TRACY has worked hard to earn and maintain a good personal and professional reputation as a public servant, and as a result enjoys a good personal and professional reputation as a public servant in the community.

61.     As a result of the termination at the hands of Defendants, TRACY suffered humiliation, shock, and grief, as well as emotional, reputational, and economic harm.

**COUNT I**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT**
**AGAINST THORNTON TOWNSHIP, HENYARD, AND FREEMAN**

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her Complaint against the Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, for a violation of the Family and Medical Leave Act (the "FMLA"), 29 U.S.C. § 2611, *et seq.*, and in support thereof states and alleges as follows:

1-61.   TRACY restates and realleges paragraphs 1-61 as though fully set forth herein.

62.     The FMLA allows an eligible employee with a serious health condition that renders the employee unable to perform his or her position to take twelve workweeks of leave during each twelve-month period.  See 29 U.S.C. § 2612(a)(1)(D).

63.     THORNTON TOWNSHIP qualifies as an "employer" as that term is defined in the FMLA because it is a public agency. *See* 29 CFR § 825.104.

64.     TRACY is an "eligible employee" as that term is defined in the FMLA because TRACY worked for THORNTON TOWNSHIP for at least (i) 12 months, and (ii) 1,250 hours of

service with THORNTON TOWNSHIP during the previous 12-month period before she took FMLA leave on February 28, 2022. See 29 U.S.C. § 2611(2).

65.     TRACY had an "entitlement to leave" (i.e., she was eligible for FMLA protections) as defined in the FMLA, because of a serious health condition that made TRACY unable to perform the functions of her position with THORNTON TOWNSHIP. *See* 29 U.S.C. § 2612(1)(D).

66.     TRACY properly requested leave from THORNTON TOWNSHIP in October 2021. This Request for Leave was supported by a certification issued by TRACY'S health care provider; certification which was provided to THORNTON TOWNSHIP in a timely manner, and which was sufficient pursuant to 29 U.S.C. § 2613(b).

67.     TRACY provided sufficient notice of her intent to take leave by sending emails to Frank M. Zuccarelli, the then-Supervisor of THORNTON TOWNSHIP on October 21, 2021.

68.     TRACY was granted FMLA leave on or about February 28, 2022, through on or about June 1, 2022.

69.     As such, TRACY was entitled to take leave under FMLA due to TRACY being eligible for FMLA protections based on her disability and for giving proper notice to THORNTON TOWNSHIP of her request, and because THORNTON TOWNSHIP approved TRACY's request.

70.     Accordingly, TRACY was entitled to be restored either to the same position held at the time her leave began, or to an equivalent position "with equivalent employment benefits, pay, and other terms and conditions of employment" upon her return. *See* 29 U.S.C. § 2614(a)(1).

71.     However, THORNTON TOWNSHIP interfered with, restrained, and/or denied the exercise of or the attempt to exercise TRACY's fundamental FMLA rights by not restoring TRACY back to her job pre-FMLA leave, not restoring her same pay, benefits, terms and conditions of employment, and ultimately terminating her employment upon return. *See* 29 U.S.C. § 2615(a)(1).

72. Upon returning from FMLA leave, TRACY was demoted from HR Department Manager to HR Clerk on equal footing with an intern. TRACY had her office taken away and was forced to work in her car in the Township parking lot, meet with coworkers outside if she needed to speak with them, was unable to access critical information to perform her job, and was unable to clock in and out of work in a manner consistent with before taking FMLA leave.

73. While TRACY's compensation rate technically did not change upon returning from her FMLA leave, she was not paid from August 1, 2022 until September 14, 2022— a mere two (2) months after returning from her FMLA leave.

74. By demoting TRACY on June 7, 2022, Defendants denied TRACY restoration to the same or equivalent position as prescribed in FMLA. See 29 U.S.C. § 2614(a)(1)(A).

75. By making TRACY work out of her car, restricting access to the building, coworkers, and necessary HR functions, and not paying TRACY for six (6) weeks upon her return from leave, Defendants failed to restore TRACY to an equivalent position with equivalent employment benefits, pay, and other terms / conditions of employment. *See* 29 U.S.C. § 2614(a)(1)(B).

76. As the result of TRACY's termination, TRACY has incurred, and is now incurring, and will continue to incur a loss in wages, salary, employment benefits, and other compensation denied or lost to TRACY by reason of the violation within the meaning of the FMLA, 29 U.S.C. § 2617(a), in an amount to be proved at trial. These costs include, but are not limited to, lost wages and medical expenses during TRACY's leave of absence, back pay from the effective date of termination, lost medical expenses from the date of termination, and lost employment benefits from the date of termination, the loss of front pay as of the date of this complaint, and any interest on the amount thereon as provided in the FMLA, as well as attorneys' fees and court costs. *See* 29 U.S.C. § 2617.

77. Defendants will be unable to show that TRACY would not have been entitled to her position even if she had not taken leave.

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and that this Honorable Court award her the following relief:

A. Back pay in an amount to be determined at trial;
B. Compensatory and consequential damages, including for emotional distress;
C. Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii).
C. Punitive damages;
D. Pre-judgment and post-judgment interest at the highest lawful rate;
E. Attorneys' fees and costs of this action;
F. Any such further relief as this Honorable Court finds reasonable.

## COUNT II
## FOURTEENTH AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983
## DENIAL OF PROCEDURAL DUE PROCESS
## AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her Complaint against the Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and ROBERT HUNT, in his individual and official capacity, for a violation of 42 U.S.C. § 1983 ("§ 1983"), a violation of TRACY's Fourteenth Amendment Due Process Rights, and in support thereof states and alleges as follows:

1-77. TRACY restates and realleges paragraphs 1-77 as though fully set forth herein.

78. As a public employee, TRACY was entitled to both a pre-termination hearing prior to her termination, as well as a post-termination hearing after her termination. This pre-termination hearing is an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.

79. A public entity prior to the termination must provide oral or written notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present her side of the story.

80. TRACY was denied a pre-termination and post-termination hearing and was not given an opportunity to present her side of the story.

81. TRACY's constitutional injury (her termination) was caused by persons with final decision-making authority—Freeman as Village Administrator, Henyard as Mayor, and Hunt as HR Manager and Tracy's supervisor.

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and that this Court award her the following relief:

A. Back pay in an amount to be determined at trial;
B. Compensatory and consequential damages, including for emotional distress;
C. Punitive damages;
D. Pre-judgment and post-judgment interest at the highest lawful rate;
E. Attorneys' fees and costs of this action;
F. An injunction and order permanently restraining Thornton Township and its officers, agents, successors, employees, and/or representatives (including the individually named Defendants) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;
G. Any such further relief as this Honorable Court finds reasonable.

## COUNT III
## COMMON LAW RETALIATORY DISCHARGE
## AGAINST ALL DEFENDANTS

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her Complaint against the Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and ROBERT HUNT, in his individual and official capacity, for a violation of, for Retaliatory Discharge, and in support thereof states and alleges as follows:

1-81.    TRACY restates and realleges paragraphs 1-81 as though fully set forth herein.

82.    Illinois has a clearly mandated public policy in favor of protesting the illegitimate policies and practices of a government agency.

83.    Illinois also has a clearly mandated public policy in favor of employers legally and adequately paying their employees under Illinois' Minimum Wage Law, 820 ILCS 105/ *et seq.*,

84.    Likewise, Illinois and the United States have clearly mandated public policies in favor of protecting an employees' rights under the Family and Medical Leave Act ("FMLA") and the Fair Labor Standard Act ("FLSA").

85.    Defendants discharged TRACY on September 14, 2022.

86.    Defendants discharged TRACY in retaliation for activities in support of the public policies in favor of reporting employer's illegal payment schemes, after TRACY sent an email to Freeman and Hunt demanding to be paid per Illinois Department of Labor wage & hour laws on September 9, 2022.

87.    Defendants' act of discharging TRACY in retaliation for her comments about the Illinois Department of Labor wage & hour laws and THORNTON TOWNSHIP not paying TRACY for work she already performed violates the clearly mandated public policies in favor of reporting employer's illegal payment schemes of its employees.

88.    TRACY'S demotion and termination was, no doubt, in retaliation for Tracy: (1) taking FMLA Leave, (2) failing to acquiesce to Henyard's request to assemble a list containing the "dirt" on THORNTON TOWNSHIP employees, (3) complaining about not being paid under Illinois Department of Labor wage & hour laws.

89.    Illinois has a clearly mandated public policy in favor of preventing retaliatory acts occurring in the workplace, which at all times herein applied to THORNTON TOWNSHIP.

90.     THORNTON TOWNSHIP discharged TRACY in retaliation for activities in support of the public policies listed above.

91.     TRACY has suffered a loss of income and significant emotional distress as a result of Defendants' retaliatory acts.

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and ROBERT HUNT, in his individual and official capacity, and that this Court award him the following relief:

A.     Back pay in an amount to be determined at trial;
B.     Compensatory and consequential damages, including for emotional distress;
C.     Punitive damages;
D.     Pre-judgment and post-judgment interest at the highest lawful rate;
E.     Attorneys' fees and costs of this action;
F.     An injunction and order permanently restraining Thornton Township and its officers, agents, successors, employees, and/or representatives (including the individually named Defendants) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;
G.     Any such further relief as this Honorable Court finds reasonable.

**COUNT IV**
**VIOLATION OF THE FAIR LABOR AND STANDARDS ACT**
**AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her Complaint against the Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and ROBERT HUNT, in his individual and official capacity, for Violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) (the "FLSA"), and in support thereof states and alleges as follows:

1-91.     TRACY restates and realleges paragraphs 1-91 as though fully set forth herein.

92.     At all times relevant herein, the FLSA applied to TRACY's employment with THORNTON TOWNSHIP.

93.     THORNTON TOWNSHIP is an "employer" as defined by the FLSA, § 203(d).  See 29 U.S.C. § 203(d).

94.     HENYARD is an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), because she is a person acting directly or indirectly in the interest of an employer in relation to an employee.  See 29 U.S.C. § 203.

95.     FREEMAN is an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), because he is a person acting directly or indirectly in the interest of an employer in relation to an employee.  See 29 U.S.C. § 203.

96.     HUNT is an "employer" as defined by the FLSA, 29 U.S.C. § 203(d), because he is a person acting directly or indirectly in the interest of an employer in relation to an employee.  See 29 U.S.C. § 203.

97.     TRACY is an "employee" as defined by the FLSA.  See 29 U.S.C. § 203(e).

98.     Defendants' willful failure to pay TRACY between August 1, 2022 and September 14, 2022 violates the FLSA. *See* 29 U.S.C. § 206; 29 U.S.C. 215(a)(2).

99.     As a direct and proximate result of this unlawful practice, TRACY suffered and continues to suffer wage loss and is therefore entitled to recover unpaid wages, liquidated damages or prejudgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, and ROBERT HUNT, in his individual and official capacity, in his individual and official capacity, and that this Court award him the following relief:

A.     Back pay in an amount to be determined at trial;
B.     Compensatory and consequential damages, including for emotional distress;
C.     Punitive damages;
D.     Pre-judgment and post-judgment interest at the highest lawful rate;

E.    Attorneys' fees and costs of this action;

F.    Any such further relief as this Honorable Court finds reasonable.

**COUNT V**
**CONSPIRACY UNDER 42 U.S.C. § 1983**
**AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her Complaint against the Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and ROBERT HUNT, in his individual and official capacity, for Civil Conspiracy under 42 U.S.C. § 1983, and in support thereof states and alleges as follows:

1-99.    TRACY restates and realleges paragraphs 1-99 as though fully set forth herein.

100.    TRACY was deprived of her constitutional rights when her employment was terminated without due process.

101.    Defendants made an agreement to deprive TRACY of her constitutional rights.

102.    There was an actual deprivation of her rights arising from overt acts in furtherance of the agreement.

103.    THORNTON TOWNSHIP has a well-settled and widespread policy of retaliating against employees for their speech and/or associations; terminating the employment of employees if they posed any kind of perceived political risk to Henyard.

104.    At least several other former THORNTON TOWNSHIP and Village of Dolton employees besides TRACY have been terminated by Henyard and Freeman for similarly dubious and spurious reasons within the last few years, including but not limited to: Jessica Jones, Stephanie Wiedeman, Lavell Redmond, Karen Johnson, Bruce Owens, Mario Vaughn, Cheryl Collins, and Samysha Williams.

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her

official capacity; and KEITH FREEMAN, in his individual and official capacity, and ROBERT

HUNT, in his individual and official capacity, and that this Court award him the following relief:

A. Back pay in an amount to be determined at trial;
B. Compensatory and consequential damages, including for emotional distress;
C. Punitive damages;
D. Pre-judgment and post-judgment interest at the highest lawful rate;
E. Attorneys' fees and costs of this action;
F. An injunction and order permanently restraining Thornton Township and its officers, agents, successors, employees, and/or representatives (including the individually named Defendants) from engaging in any such further unlawful conduct and employment practices, including the policies and practices complained of herein;
G. Any such further relief as this Honorable Court finds reasonable.

**COUNT VI**<br>**COMMON LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**AGAINST ALL DEFENDANTS**

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her

Complaint against the Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD,

individually and in her official capacity; and KEITH FREEMAN, in his individual and official

capacity, and ROBERT HUNT, in his individual and official capacity, for intentional infliction of

emotion distress, and in support thereof states and alleges as follows:

1-104. TRACY restates and realleges paragraphs 1-104 as though fully set forth herein.

105. Defendants' conduct described above, such demoting TRACY after taking FMLA

leave, making her work in the parking lot, failing to pay her for over six (6) weeks, and terminating

her employment after complaining of not being paid, was truly extreme and outrageous and goes

beyond all possible bounds of decency.

106. Additionally, Defendants committed these acts while acting in a position of authority

to TRACY, which makes the acts de facto extreme and outrageous. *See McGrath v. Fahey*, 126 Ill. 2d

78, 127 Ill. Dec. 724, 533 N.E.2d 806 (1988).

107. Defendants either intended that their conduct would inflict severe emotional distress or knew that there was at least a high probability that their conduct would cause severe emotional distress when they retaliated against TRACY.

108. A defendant in a tort case "must take his plaintiff as he finds [her], even if [she] is more susceptible to injury than the average person." *Zurba v. United States*, 247 F. Supp. 2d 951, 962 (N.D. Ill. 2001); *Reed v. Union Pacific Railroad Co.*, 185 F.3d 712, 717 (7th Cir. 1999); *Colonial Inn Motor Lodge, Inc. v. Gay,* 288 Ill. App. 3d 32, 45, 680 N.E.2d 407, 416 (1997).

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendants, THORNTON TOWNSHIP; TIFFANY HENYARD, individually and in her official capacity; and KEITH FREEMAN, in his individual and official capacity, and ROBERT HUNT, in his individual and official capacity, and that this Court award him the following relief:

A. Back pay in an amount to be determined at trial;
B. Compensatory and consequential damages, including for emotional distress;
C. Punitive damages;
D. Pre-judgment and post-judgment interest at the highest lawful rate;
E. Attorneys' fees and costs of this action;
F. Any such further relief as this Honorable Court finds reasonable.

## COUNT VII
## THE ILLINOIS MINIMUM WAGE LAW
## AGAINST THORNTON TOWNSHIP

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her Complaint against the Defendant, THORNTON TOWNSHIP, for a violation of the Illinois Minimum Wage Law, 820 ILCS 105/ *et seq.*, (the "IMWL"), and in support thereof states and alleges as follows:

1-108. TRACY restates and realleges paragraphs 1-108 as though fully set forth herein.

109. At all times relevant herein, the IMWL applied to TRACY's employment with THORNTON TOWNSHIP.

110.     THORNTON TOWNSHIP is an "employer" under the IMWL. *See* 820 ILCS 105/3(c).

111.     TRACY is an "employee" under the IMWL. *See* 820 ILCS 105/3(d).

112.     From August 1, 2022 through September 14, 2022, TRACY was supposed to have been paid her regular hourly wages but was not paid at all.

113.     Illinois' minimum wage in 2022 was $12.00 per hour.

114.     Thus, at a minimum, TRACY should have earned Two Thousand Eight Hundred Eighty Dollars ($2,880.00) for six (6) weeks' worth of work under the IMWL. However, she was paid Zero Dollars ($0.00) during this time.

115.     Thus, THORNTON TOWNSHIP violated the IMWL.

116.     As a direct and proximate result of this unlawful practice, TRACY suffered and continues to suffer wage loss and is therefore entitled to recover unpaid wages, liquidated damages, or prejudgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendant, THORNTON TOWNSHIP; and that this Court award her the following relief:

A.     In an amount to be more specifically evidenced at trial, representing final compensation to which TRACY is entitled;
B.     Statutory damages as set forth in the IWPCA;
C.     Attorney's fees, costs, and expenses of litigation; and
D.     Any such further relief as this Honorable Court finds reasonable.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST HENYARD, HUNT, & FREEMAN (in their individual capacities)

NOW COMES the Plaintiff, SANDRA TRACY, by and through her attorneys, for her Complaint against the Defendants, TIFFANY HENYARD, individually, and KEITH FREEMAN,

individually, and ROBERT HUNT, individually, for tortious interference with prospective economic advantage, and in support thereof states and alleges as follows:

1-116.  TRACY restates and realleges paragraphs 1-116 as though fully set forth herein.

117.  "When a third party maliciously sticks his nose into the economic relationship between an employee and an employer and causes the employee to lose her job, that third party is subject to the tort cause of action even if the employment was at-will." *Ali v. Shaw,* 481 F.3d 942, 945 (7th Cir. 2007) (citing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870 (1991)).

117.  TRACY had a reasonable expectancy of staying in a valid business relationship with THORNTON TOWNSHIP due to her continued employment.

118.  FREEMAN, HUNT, and HENYARD had knowledge of this expectancy.

119.  FREEMAN, HUNT, and HENYARD intentionally and unjustifiably interfered with this expectancy by inducing or caused a breach or termination of the expectancy when (a) FREEMAN and HUNT failed to sign off on TRACY's hours and failed to pay Tracy between August 1, 2022 and September 14, 2022 and ignored her pleas to be paid; and (2) Henyard lied to the Township Board of Trustees in her quest to terminate Tracy.

120.  TRACY has suffered a loss of income and significant emotional distress as a result of FREEMAN, HUNT, and HENYARD's retaliatory acts.

WHEREFORE, Plaintiff, SANDRA TRACY, respectfully requests that judgment be entered against Defendants, TIFFANY HENYARD, individually, and KEITH FREEMAN, individually, and ROBERT HUNT, individually, and that this Court award her the following relief:

A.  Back pay in an amount to be determined at trial;
B.  Compensatory and consequential damages, including for emotional distress;
C.  Punitive damages;
D.  Pre-judgment and post-judgment interest at the highest lawful rate;
E.  Attorneys' fees and costs of this action;
F.  Any such further relief as this Honorable Court finds reasonable.

## <u>JURY DEMAND</u>

Plaintiff hereby requests a jury trial.

Respectfully submitted,
SANDRA TRACY

By:    <u>/s/ Matthew R. Custardo</u>
One of his Attorneys

Matthew R. Custardo (ARDC #: 06329579)
CUSTARDO LAW, LLC
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com

## **VERIFICATION**

I, SANDRA TRACY, am the Plaintiff in this action. I have read the foregoing Verified Complaint and am familiar with its contents. I declare under penalty of perjury under the laws of the United States that all the factual statements contained in the foregoing are true and accurate to the best of my belief and is based upon personal knowledge, except where expressly indicated otherwise.

_____
SANDRA TRACY

Matthew R. Custardo (ARDC #: 06329579)
CUSTARDO LAW, LLC
650 Warrenville Road, Suite 100
Lisle, IL 60532
Tel: 630-557-1451
matthew@custardolaw.com